The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Commissioner Ballance, the briefs on appeal and arguments of counsel. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award with the exception of modifications as noted below. Accordingly, the Opinion and Award by Commissioner Ballance is modified and affirmed. This case was heard before Commissioner Ballance in Wadesboro on 22 September 1994. Thereafter, following receipt of stipulated medical records, depositions and contentions, the matter was decided by her and is here on plaintiff's appeal from her Opinion and Award.
RULINGS ON EVIDENTIARY MATTERS
1. Plaintiff's objection to defendant's Exhibit #1 (8 pages) from the deposition of Dr. George Ferre is OVERRULED. Defendant's Exhibit #1 (8 pages) is hereby made part of the record. This is a modification from Commissioner Ballance's Opinion and Award.
2. Defendant's objection to the tender of Dr. George Ferre as an expert in the field of orthopedic surgery is OVERRULED and Dr. Ferre is accepted as an expert witness in the field of orthopedic surgery.
* * * * * * * * * * * * * *
Defendants filed a Motion to Dismiss Plaintiff's appeal for failure to file a Brief. The Full Commission finds that plaintiff's counsel, Henry T. Drake, was ill, and, due to excusable neglect, failed to file a brief. The Full Commission rules that Defendants were not prejudiced by the failure to file the brief and thus denies the Motion to Dismiss.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between employee-plaintiff and employer-defendant. Employer-defendant is self-insured. Crawford and Company is the adjusting service.
3. Plaintiff was seen by Dr. Ertugral, a general practitioner, on several occasions immediately after the accident. Dr. Ertugral referred plaintiff to Dr. David DuPuy, an orthopedic surgeon.
4. Plaintiff's average weekly wage is $127.50.
5. Plaintiff is alleging injury by accident or a specific traumatic incident which occurred on May 4, 1993. A Form 21 agreement was approved on 10 June 1993.
6. The following exhibits were admitted into evidence by stipulation:
 a) Stipulated Exhibit 1, (one page); Stipulated Exhibit 2, (two pages); Stipulated Exhibit 3, (one page); Stipulated Exhibit 4, (one page); Stipulated Exhibit 5, (two pages).
* * * * * * * * * * * * * *
The Full Commission adopts the Findings of Fact found by Commissioner Ballance, as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-eight (48) years old and had obtained her GED and certification as a Certified Nursing Assistant. Plaintiff's prior work history included jobs as a cashier in a convenience store, taking care of elderly patients in their home and work as a nursing assistant for the elderly at nursing homes. Plaintiff had worked at Hardee's Inc. eleven (11) days prior to her injury.
2. On 4 May 1993, plaintiff was working as a cashier when she slipped on some water near the ice machine on the front line at the Hardee's Restaurant located at Route 74, Wingate, North Carolina, injuring her upper arm, left knee, left leg, right ankle and foot and her back. Plaintiff is 5 ft. 3 in. tall and weighed more than 220 pounds at said time.
3. On 4 May 1993, plaintiff was taken by ambulance to the Union County Memorial Hospital where she was treated and released from the hospital on that date.
4. Plaintiff sought treatment with Dr. Gultekin Ertugral, a general practitioner, on several occasions thereafter.
5. Plaintiff was referred for treatment for her back pain to Dr. David Norris DuPuy, who is a specialist in orthopedic surgery on 7 July 1993. Her physical exam and subjective symptoms confirmed pain in the lumbar region where the lumbar spine connects to the sacrum and nerve root irritation. Dr. DuPuy diagnosed low back sprain and low back pain. He excused plaintiff from work, sent her to physical therapy and prescribed exercise and medication.
6. At her 28 July 1993 follow up visit with Dr. DuPuy, plaintiff had evidence of sciatic nerve irritation and complained of continuing left knee and right ankle pain resulting from her work-related fall. Dr. DuPuy suspected a ruptured disk at the L5 on the right and he ordered a CAT scan which was done 9 August 1993. Plaintiff had evidence of degenerative disc changes between the fifth lumbar vertebra and the sacrum and an irregular "fuzzy appearance" on the scan on the left. Plaintiff also had a possible disk bulge or a disk fragment on the left side. There was no evidence of a right sided disk problem.
7. On 19 August 1993, Dr. DuPuy found upon examination, evidence of back and hip nerve irritation and pain. He advised plaintiff to work through her pain and further rendered an opinion that she was able to return to work with no restrictions on 23 August 1993. He rated her as having a 3% permanent partial impairment of the back due to her injury and continuing pain. Dr. DuPuy did not believe plaintiff's fall aggravated her pre-existing spondylosis. Plaintiff did not return to work because she did not feel she was able to do the work due to her pain. Plaintiff was justified in refusing to return to work at said time.
8. Dr. DuPuy believed plaintiff's complaints of pain were reasonable, but believed plaintiff should be able to work while in constant pain. Dr. DuPuy said the North Carolina Workers' Compensation Guidelines only allows a physician to assign a rating of 5% maximum for pain and that his rating of plaintiff at 3% was based upon her pain and loss of function.
9. Defendant voluntarily stopped plaintiff's temporary total benefits and medical benefits without approval from the Industrial Commission on 22 August 1993 and thereafter filed a Form 24 Application to Stop Payment on 10 September 1993. Said application was approved on 27 September 1993.
10. Subsequent to her release by Dr. DuPuy, plaintiff sought treatment with Dr. Mac, an orthopedic surgeon in Albemarle, on 15 November 1993, who diagnosed acute lumbar strain and leg pain and prescribed medication. Upon examination, plaintiff had diffuse thoracic and lumbar tenderness; movements of the spine were painful and restricted; there was mild paraspinal muscle spasms; however, the examination was normal in all other areas tested. Dr. Mac's note indicated that plaintiff could return to light work, however, no light duty work was available through defendant-employer. Defendant-employer made no efforts to provide vocational assistance to help plaintiff find a job suitable to her restrictions.
11. Plaintiff sought treatment with Dr. Ferre on 24 January 1994.
12. Although this is an admitted claim, defendant refused to provide medical treatment for plaintiff after they ceased temporary total disability compensation on 22 August 1993. Plaintiff has been seeking treatment thereafter according to her ability to pay or otherwise arrange for treatment.
13. Plaintiff gave Dr. Ferre a history of a slip and fall at work where her knees struck the floor first and then falling backwards hitting against a cooler. She reported that thereafter, she had low back and right leg pain with numbness and that she had a burning sensation in her legs that felt like something on fire. She further told Dr. Ferre that she had to sleep in a recliner and was taking a number of medications.
14. Upon examination, plaintiff was unable to extend her back at all, her leg reflexes were normal and there was no atrophy. Dr. Ferre suspected spinal stenosis and recommended an MRI. The MRI showed plaintiff had injury or build up of bone at both the L4 and L5 levels. Dr. Ferre opined that this build-up pre-existed plaintiff's injury but was aggravated by the fall at work and went from an asymptomatic to a symptomatic condition.
15. Dr. Ferre described plaintiff's condition as a localized overgrowth of bone in the lower spine which is causing pressure against her spinal canal. A fall frequently will aggravate this condition. The Full Commission finds from the greater weight of the evidence including the opinion of Dr. Ferre that as a result of her admittedly compensable injury, plaintiff has been unable to work and earn wages in her former employment since her injury. Even if plaintiff is capable of light duty work as recommended by Dr. Mac, no light duty work was available for plaintiff at Hardee's and defendant has not presented evidence of any suitable jobs available to plaintiff that she could get.
16. According to Dr. Ferre and based upon the greater weight of the evidence, plaintiff has a 10% permanent partial impairment of her spine as a result of her work injury. Plaintiff is able to do some sedentary work that would not involve lifting, bending or stooping.
17. Dr. Ferre rendered an opinion that the condition or symptoms for which he treated plaintiff in 1994 and 1995 could have been caused by her fall at work but more likely were an aggravation of a pre-existing condition as a result of the fall at work.
18. Since reaching maximum medical improvement, plaintiff retains a substantial loss of earning capacity and defendant has failed to show that there are jobs available which plaintiff could reasonably obtain if she sought employment when considering plaintiff's physical limitations and vocational limitations and experience.
19. The medical treatment provided to plaintiff from various doctors as a result of her compensable injury including Dr. George Ferre was reasonably necessary to effect a cure, or provide relief and/or tended to lessen her disability.
20. Plaintiff is in need of future medical maintenance and treatment as a result of her compensable injury.
21. The Form 24 Application by Defendant-Carrier to Stop Payment was improvidently approved.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 4 May 1993 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer which resulted in injury to her back, left knee and leg, right ankle and foot and upper arm. N.C. Gen. Stat. § 97-2(6).
2. As a result of her admittedly compensable injury, plaintiff has been temporarily totally disabled from 4 May 1993 through the date of this Opinion and Award and continuing. N.C. Gen. Stat. § 97-32.
3. Plaintiff is entitled to continuing temporary total disability compensation benefits at the rate of $85.04 per week from 4 May 1993 through the date of this Opinion and Award and continuing, until she returns to work or until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendant provide all medical treatment arising from her injury by accident including future medical maintenance and treatment to the extent such treatment tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25. The treatment provided to plaintiff by and through Dr. Ferre, Dr. Mac, Dr. Ertugral and Dr. DuPuy, including the 1995 MRI ordered by Dr. Ferre is hereby authorized.
5. The approved Form 24 Application to Stop Payment should be vacated.
6. As a result of her admittedly compensable injury, plaintiff has a ten percent (10%) permanent partial impairment to her back.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission affirms the holding of Commissioner Ballance and enters the following:
AWARD
1. Subject to an attorney's fee, defendant shall pay temporary total disability compensation benefits to plaintiff at the rate of $85.04 per week beginning 5 May 1993 through the date of this Opinion and Award and continuing thereafter until plaintiff returns to work, or until further Order of the Industrial Commission. Defendant shall be given a credit for compensation paid to plaintiff.
2. Defendant shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of said compensable injury by accident when bills for same are submitted to defendant and approved through procedures approved by the Industrial Commission.
3. An attorney's fee in the amount of 25% of the compensation awarded herein is hereby approved for plaintiff's counsel which shall be deducted from the aforesaid accrued benefits due plaintiff and defendants shall thereafter forward every fourth check of compensation benefits due plaintiff to counsel for plaintiff as long as plaintiff is receiving said compensation benefits.
4. Defendant shall pay an expert witness fee for depositions in the amount of $300.00 to Dr. George Ferre and $300.00 to Dr. DuPuy as part of the costs.
5. Defendant shall pay the costs due this Commission.
* * * * * * * * * * * * * *
ORDER
IT IS HEREBY ORDERED that:
1. The approved Form 24 Application to Stop Payment is VACATED.
2. The medical treatment provided to plaintiff by and through Dr. Ferre, Dr. Mac, Dr. Ertugral and Dr. DuPuy is AUTHORIZED.
 S/ ___________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ___________________________ DIANNE C. SELLERS COMMISSIONER